# EXHIBIT A

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | *For Court Use Only* |
|---|---|---|
| _____ COUNTY | | |

| **Instructions ▼** | | |
|---|---|---|
| Enter above the county name where the case was filed. | Nona Farrar <br> **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | Amazon.com Services Inc <br> **Defendant / Respondent** *(First, middle, last name)* | **21L 0063073** <br> **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/. <br><br> E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org. <br><br> Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons,* or *Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help. <br><br> If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | 1. | **Defendant/Respondent's address and service information:** |
|---|---|---|
| In 1a, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | | a. Defendant/Respondent's primary address/information for service: <br> Name *(First, Middle, Last):* Amazon.com Services Inc <br> Registered Agent's name, if any: Corporation Service Company <br> Street Address, Unit #: 300 Deschutes Way - Suite 304 <br> City, State, ZIP: Tumwater, WA 98501 <br> Telephone: _____ Email: _____ |
| In 1b, enter a second address for Defendant/ Respondent, if you have one. | | b. If you have more than one address where Defendant/Respondent might be found, list that here: <br> Name *(First, Middle, Last):* _____ <br> Street Address, Unit #: _____ <br> City, State, ZIP: _____ <br> Telephone: _____ Email: _____ |
| In 1c, check how you are sending your documents to Defendant/ Respondent. | | c. Method of service on Defendant/Respondent: <br> ☐ Sheriff ☐ Sheriff outside Illinois: _____ <br> *County & State* <br> ☐ Special process server ☐ Licensed private detective |

Enter the Case Number given by the Circuit Clerk: **21 006507 3**

| | |
|---|---|
| In 2, enter the amount of money owed to you. | **2. Information about the lawsuit:**<br>Amount claimed: $ 860,000 |
| In 3, enter your complete address, telephone number, and email address, if you have one. | **3. Contact information for the Plaintiff/Petitioner:**<br>Name (First, Middle, Last): Nona Farrar<br>Street Address, Unit #: P.O. Box 5015<br>City, State, ZIP: Chicago IL 60680<br>Telephone: 312-818-8745  Email: Nonafarrar at hotmail.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |

| | |
|---|---|
| Check 4a or 4b. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4. Instructions for person receiving this *Summons* (Defendant):**<br>☐ a. To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:<br>Address: _____<br>City, State, ZIP: _____ |
| In 4a, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐ b. Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in Courtroom: _____<br>    *Date*        *Time*<br>**In-person at:**<br>_____<br>*Courthouse Address*    *City*        *State*    *ZIP*<br>OR |
| In 4b, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | **Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):<br>By telephone: _____<br>    *Call-in number for telephone remote appearance*<br>By video conference: _____<br>    *Video conference website*<br>_____<br>*Video conference log-in information (meeting ID, password, etc.)*<br><br>Call the Circuit Clerk at: _____ or visit their website<br>    *Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>    *Website* |

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** 8/17/21        *Seal of Court*<br>**Clerk of the Court:** IRIS Y MARTINEZ |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **This *Summons* must be served within 30 days of the witness date.**<br><br>Date of Service: _____<br>    (*Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.*) |

ILLINOIS CIRCUIT COURT OF ILLINOIS – DISTRICT 3 – LAW DIVISION

21L 0063073

NONA FARRAR

vs.

AMAZON.com SERVICES, INC

THOMAS CWALINSKI, LISA ROLF- individual and official capacities

UNIDENTIFIED Amazon Does and JEFF BEZOS – ~~individual and~~ official capacities

NATURE OF ACTION

This is an employment discrimination case alleging unlawful retaliation pursuant to 42 U.S.C.

1981, Failure to Accommodate and Failure to in Good Faith participate in the Interactive

Process pursuant to the Illinois Human Rights Act under Section 2-102 and that Unidentified

Executives within Amazon including Bezos, turn a blind eye and agreed to aide and abet

warehouse Managers, Supervisors, Human Resource and Accommodation personnel in a

culture of cover up by falsely promoting their adherence to state and federal law prohibiting

discrimination, all the while Executives actually foster a culture of retaliation against those that

speak out about discrimination state to state.

1

FAILURE TO MAKE REASONABLE ACCOMMODATION AND ENGAGE IN INTERACTIVE PROCESS IN

GOOD FAITH

1. A decision of dismissal was made by the IDHR on both IDHR claims on May 13,2021.

2. Plaintiff started working 3rd shift at Amazon approximately November 6, 2018 at it warehouse located in Elgin, Il.

3. At the time plaintiff began work at Amazon she provided Eric Salerno with a copy of her Work Restriction ( Exhibit 1 ).

4. Plaintiff is qualified individual with a disability that was able to perform the job with or without an accommodation. Plaintiff's lifting restriction indicated it is a permanent Lifting Restriction as a result of a bus accident she had in 2016.

5. Amazon management Thomas, Tony and leads Francisco and Eric were aware of the Lifting Restriction when plaintiff started work at Amazon  and had been providing a lift assist for anything too heavy for plaintiff IF needed but, that changed on 4/3/19. (Exhibit 2 )

6. On 4/3/19 Thomas Cwalinski decided to send plaintiff home without pay.

2

7.  Plaintiff worked in various sections of the warehouse from the date she started until the date she was told to go home on 4/3/19 by Thomas Cwalinski to get an updated work restriction and not to return to work until she got it.

8.  Plaintiff was assigned to work in the Small Sort section which only dealt with small packages but, after plaintiff was done in Small Sort for the night, she was sent over to the Pull/Scan section which sometimes included some packages that were heavier.

9.  Amazon has a policy that they promote in training videos and at the start of the shift that any employee can request a Lift Assist for any packages they feel are too heavy for them to lift on their own.

10. From the time plaintiff was employed at Amazon when and IF a package was too heavy for her to lift on her own, she got a lift assist when she was in the Pull/Scan section.

11. There were plenty of other employees at Amazon without medical challenges that also required a Lift Assist and also those with challenges such as pregnant women, some seniors, little people etc. that required a Lift Assist.

12. Plaintiff had also worked overtime in other departments during the day like in the department that would set up the huge warehouse floor. During that shift on a few occasions some packages would come in that required us to do the Pull/Scan job however, for the most part working during the day just required setting up the floor.

3

13. In February 2019 Accommodations contacted plaintiff that someone had contacted them letting them know about the Lifting Restriction.

14. They requested medical documents because they alleged they never got the Lifting Restriction plaintiff gave to Eric Salerno when she started and that Eric Salerno admitted to Thomas, Tony and Francisco he got and sent to HR. This conversation took place prior to Accommodations contacting plaintiff.

15. Plaintiff made an appointment with her doctor using her Medicaid insurance.

16. Because it's Medicaid plaintiff was not able to just get in to see the Orthopedic that has treated her since the bus accident she had in 2016.

17. Plaintiff's appointment was for 5/2019.

18. Plaintiff emailed Accommodations back and let Thomas know that her appointment was for 5/2019. Accommodations said they'd close the case and just reopen it after her doctors appointment in May 2019. Plaintiff continued to do her job in Small Sort, Floor Set up and the Pull/Scan departments.

19. Plaintiff told management that if anyone cancelled she'd get an earlier appointment.

20. On 4/3/19 plaintiff worked an hour earlier than her regular start time. Plaintiff's hour early was in the Small Sort section.

21. Once it was time to start plaintiff's regular shift, she saw that she was <u>assigned</u> to the Pull/Scan section.

22. Plaintiff told Thomas as a reminder that she would need a lift assist for anything too heavy because of her lifting restriction.

23. Thomas snapped, just punch out and get your Updated Work Restriction and don't come back until you get it.

24. Plaintiff never refused to work in the Pull/Section but, did always remind management that she'd need a lift assist for anything too heavy because of her Lifting Restriction.

25. Plaintiff told Thomas she didn't have enough UPT ( free hours Amazon gives ) time to hold her off until her doctors appointment.

26. Thomas told plaintiff she'd be terminated without UPT hours.

27. Since Thomas told plaintiff to punch out she did even though plaintiff was willing to work in the Pull/Scan section.

28. Plaintiff contacted Accommodations to see if she could get a leave of absence until she could get in to see the doctor for an Updated Work restriction.

29. Accommodations said they couldn't grant a leave of absence until they got the Updated information from the doctor.

30. In addition to that, Accommodations and HR said that since plaintiff was part time she could not get a Leave of Absence until her doctors appointment.

5

31. Plaintiff was denied the reasonable accommodations she requested, the lift assist IF needed that she always got and time off without pay until she could get in to see the doctor so she would not be terminated.

32. Plaintiff was able to get an earlier appointment late April with the doctor but, by that time Amazon had already terminated plaintiff and plaintiff had no interest in working with a company that would treat an employee the way plaintiff had been treated when it was Amazon that requested the Updated Work Restriction.

33. Amazon failed to in good faith engage in the Interactive Process as well.

34. Lisa Rolf is the HR person that plaintiff communicated with regarding the Updated Work Restriction and issues she had with her hours being mysteriously taken by someone within Amazon and mysterious schedule changes that would result in termination emails.

35. Even though Lisa Rolf knew that plaintiff didn't have enough UPT hours to halt a termination until her doctors appointment that was scheduled for 5/2019 she made no further contact with plaintiff after telling plaintiff that she would not be able to excuse anymore days after 4/12/19.

6

36. After that email communication from Lisa Rolf there was not further communication about what could be worked out for plaintiff to remain employed even if it meant being off without UPT hours which are not paid hours.

37. Lisa Rolf did ask if plaintiff could see another doctor but, plaintiff could only be seen by the Orthopedic that treated her for the bus accident who knew all the ins and outs of treatment and who was approved for plaintiff to see with her Medicaid insurance and lawyers handling her bus accident case.

38. Once Lisa Rolf notified plaintiff that she would not excuse any more hours, that was the end of communication with HR then came the termination notice.

39. Plaintiff's credit cards were all closed with the exception of one with a low credit limit of $300.00 but, the one with a credit limit of $15,000 and others with large limits due to late payments or no payments were closed, plaintiff's credit rating went down preventing her from purchasing a home and getting qualified for a mortgage that would pay up to $40,000 of her $69,000 student loans, plaintiff's car was up for repossession in or around October 2019 and plaintiff was just working her gig jobs to pay bills.

40. Plaintiff request compensatory damages for pain and suffering, mental anguish and damage to her credit in the amount of $180,000 ( One Hundred Eighty Thousand )

RETALIATION – 42 U.S.C. 1981

41. From the time of hire up to her termination, plaintiff had been complaining to Thomas Cwalinski, Tony Tolbert ( Managers), Eric Salerno, Francisco about the offensive rap music that was blasted at Amazon and offensive language some of the employees used in the workplace.

42. Plaintiff is an African American female that was quite offended by the lyrics in the music. The Amazon Managers/Leads are White and or Hispanic and acted with racial and retaliatory motives based on what plaintiff experienced.

43. The music played in the warehouse was managed by the Thomas, Tony, Eric, Francisco and whatever other manager or lead that was on duty.

44. No employee could change the music without asking permission.

45. The offensive music used the N word quite a bit, the B word the rhymes with Witch, the W word that rhymes with the tool one would use to tend their garden and that rappers use to offensively describe women, the word P that ends in Y, the offensive rap music usually talked about killing this or that one and even killing the mother of someone.

46. One of the rappers played was a guy called 6ix9ine who often talks about killing and sex in his raps.

8

47. The managers knew that plaintiff had complained numerous times to them about the offensive music that should not be played in the workplace.

48. For some reason even though the music was rap and had offensive lyrics, you could see the Mangers enjoyed it, thought it was funny and knew the words to some of the songs that they sang along with.

49. Plaintiff even had to leave her station on a few occasions to ask management to take the music off.

50. On one occasion in March of 2019 Claimant had to go over to Tony and tell him to take the song off. Tony said he'd told them not to play that type of music and told Eric to turn it off. Tony was sitting right by the music player close to the entrance.

51. Eric said something to the effect that "it's almost over." He knew the lyrics.

52. It was no secret that plaintiff found the music to be offensive and did not hesitate to tell management so but, since most employees enjoyed it, plaintiff was in the minority and Thomas said everyone wants to hear it.

53. Since plaintiff complained so much about the music, Francisco moved a totally separate set of speakers in March of 2019 closer over to plaintiffs normal work area, Small Sort.

9

54. This set of speakers was totally separate from the music playing device closest to the entrance by Tony's desk.

55. The speakers on the music playing device Franciso moved close to the Small Sort area was not used as an intercom system as Francisco falsely testified 1st Fact Finding IDHR.

56. Amazon didn't even have an intercom system. They used a bullhorn.

57. The offensive language employees used on the floor and in the lunch room mirrored some of the language in the rap music such as the N word, the B word , the F work and talk of violence. It made it quite difficult for plaintiff to work around these individuals.

58. The employees obviously were not disciplined as they continued as they had as if plaintiff had never complained to management.

59. Management tired of plaintiff's complaints about the offensive music and employees language and tried various methods to get rid of her.

60. One method was that plaintiff's schedule would be mysteriously changed throughout her employment.

61. Termination notices would then be sent out to plaintiff who would be in a fit of stress after having worked 3rd shift.

62. Plaintiff had to spend time on the phone and or sending and responding to emails to see what happened, how it happened and who was retaliating in such a manner.

10

63. One manager would say Thomas did it, Thomas would say HR or another manager did it, HR would say management did it.

64. Another way management retaliated against plaintiff was to take her UPT hours away as if plaintiff had missed days even though plaintiff hadn't.

65. On 12/3/18 someone took 13 hours of plaintiff's UPT time which resulted in a termination email.

66. Plaintiff spent time and effort to get around the retaliation by emailing HR where Gaffney returned 13 hours of UPT.

67. Another instance of the taking of UPT hours was when plaintiff had been told by Francisco to go see Thomas in the office.

68. The conference was on 1/24/19 for Thomas to make plaintiff aware that I only had 7 hours of UPT time left and if I missed any days that would eat up UPT hours and termination would occur.

69. Ironically, Amazon has an unwritten policy or maybe it's written that if you are late one minute they will take all the hours of a shift away.

70. So if one works 5 hours and is late 1 minute Amazon would take the whole shift away and the employee would be sent home for that shift.

11

71. When plaintiff happened to check A to Z, Amazon's time keeping site, she found that someone had taken 3 of her hours right after plaintiff left the conference with Thomas, on 1/24/19 the same night ( Exhibit 3 )

72. Thomas was the only one that accessed plaintiff's hours on 1/24/19 night.

73. A to Z said only Management and or HR can remove and or add hours.

74. Plaintiff emailed Lisa Rolf about it and she insisted that nobody had taken any hours from plaintiff and she insisted that plaintiff only had a total of 4 UPT hours ( Exhibit 4 )

75. One night when plaintiff was trying to punch out she couldn't so, Tony had to sign her out. Turns out someone had changed plaintiff's schedule without her knowledge which resulted in plaintiff having to spend time with phone calls and emails to see who'd done it. Tony said Thomas did it, Thomas said HR did it.

76. Even though Amazon is under the impression that since the bogus termination letters were rectified plaintiff should not complain about it, that diminishes the fact that plaintiff alleges it was a retaliation effort.

77. Once in 2/19 when plaintiff was made aware of a schedule change and given the opportunity to let Amazon know what days she was available to work, Amazon still scheduled plaintiff to work days she couldn't work.

78. Plaintiff wrote on the schedule change form that I couldn't work on Sundays because there was no public transportation.

79. Management and or HR scheduled plaintiff to work Sundays so, another termination email came. Everyone pointed the finger at the other as to who was responsible. Lisa Rolf said it was Stephanie but, Stephanie said it was Thomas, Thomas said HR is responsible for HR schedule changes.

80. Lisa Rolf said that the issue was plaintiff's fault after a back and forth of emails after having worked 3rd shift.

81. After plaintiff was finally was able to get Lisa Rolf to do some fact checking she found that the problem was not plaintiff.

82. Plaintiff was only made aware in advance of a schedule change that was to be implemented 2/19. Plaintiff filled out the Schedule change form indicating she could not work Sundays 1/24/19. The other schedule changes were mysterious ones.

83. When plaintiff started working 3rd shift at Amazon she provided Eric Salerno with a copy of her Permanent Lifting Restriction.

84. Eric verified in the IDHR 1st fact finding conference that Amazon was aware of it.

85. Plaintiff had worked at Amazon since 11/18 in various departments but, was normally assigned to Small Sort but, after finishing in Small Sort would be assigned to the Pull/Scan area where there were instances heavier packages would be handled.

13

86. Plaintiff always got a Lift Assist IF and when she had to lift anything too heavy. Management was aware of that fact and Management promotes employees using Lift Assist and even has a training video employees using Lift Assists.

87. Plaintiff was told about Small Sort during the hiring process as well but, plaintiff had worked various departments at Amazon.

88. On 4/3/19 plaintiff worked in Small Sort an hour earlier than her regular start time.

89. Once her regular shift started plaintiff saw that she was assigned to the Pull/Scan section.

90. Thomas told plaintiff that Small Sort was closing and he didn't have anything else for plaintiff to do so she was going to the Pull/Scan area.

91. The problem with that story is that other employees were assigned on the board to Small Sort that night when the regular shift started. Small Sort had not closed. Thomas was retaliating.

92. Plaintiff told Thomas and Franscisco as a reminder that for anything too heavy she'd need a lift assist and readied to go the Pull/Scan area.

93. Thomas snapped, just punch out and don't come back until you get your UPDATED Work Restriction.

14

94. Plaintiff indicated that she was just saying she'd need a Lift Assist for anything too heavy. Plaintiff told Thomas she didn't have enough UPT time to miss work until the date of her doctors appointment which Management and Accommodations already knew was scheduled for 5/19.

95. Thomas said without enough UPT hours termination would occur.

96. Plaintiff couldn't get a Leave of Absence because she was part time and Accommodations said without the UPDATED restriction they couldn't do anything to help.

97. Lisa Rolf said she would not excuse any more days after 4/12/19.

98. Plaintiff was able to get an earlier doctors appointment for late April but, Amazon had processed the termination paperwork 4/16/19 and plaintiff was terminated before she could get in to see the doctor late April.

99. Plaintiff request $180,000 in compensatory damages for pain and suffering, mental anguish and will request punitive damages at later date.

AMAZON UNIDENTIFIED EXECUTIVES AND BEZOS FALSELY PRETEND TO BE A COMPANY THAT FOLLOWS STATE AND FEDERAL ANTI DISCRIMINATION LAWS

100.From the date of plaintiff's hire 11/5/18 up to present Bezos agreed with Unidentified Executives and Managers to post and or otherwise cite to federal and state anti-discrimination

laws around Amazon facilities, in their advertising, in their recruiting, hiring, investigations, and terminations process to falsely claims that they are a law abiding company in an effort to lull potential employees into Amazon Bezos and the Unidentified Executives use and or otherwise allow their lawyers to use these same anti-discrimination company written policies during litigation to pretend that they are a law abiding company that follows the state and federal anti-discrimination laws.

101. Plaintiff believed the hype of all the anti-discrimination posters they flaunt during the interviewing and hiring process just as many others that have ended up in litigation state to state with Amazon believed.

102. Bezos and Unidentified Executives agree with Amazon managers state to state to unlawfully deduct UPT hours for legally protected medical absences and or access points for legally protected medical absences without engaging in an individualized interactive process or in good faith to discuss a reasonable accommodation.

103.Bezos and the Unidentified Executives only offer a very small amount for medical insurance ($500 ) for those that opt in. Many of Amazon's employees , like plaintiff have   Medicaid insurance where employees have to work with doctors in their network and get approval for service. Medicaid appointments are a state service.

16

104. Bezos and the Unidentified Executives policy of agreeing to allow Managers failure to in engage in good faith in the Interactive Process and the reasonable accommodations process results in terminations of employees that were doing the job without any problems only to be terminated because of a medical appointment to get UPDATED medical documents and or for other medical appointments prior to their UPT time expiring.

105. Bezos and the Unidentified Executives agreed that they would not offer part time employees a unpaid medical leave without them having paperwork from the doctor first without taking into consideration that the employee has to get to the doctors appointment to get the paperwork Amazon wants.

106. Even when Amazon knows the date of the doctors appointment and allows the employee to continue to work without any issues of his/her work ( like plaintiff ) ,the employee can be targeted for the set up of the UPT time to get rid of the employee with Amazon Managers citing their attendance policy that Bezos and the Unidentified Executives agreed would be used even for legally protected medical issues.

107. Bezos and the Unidentified Executives agreed to allow their Managers to be selective as to when they could target an employee with medical needs to employ the UPT set up which is what happened to plaintiff.

17

108.Amazon had plaintiff's permanent work restriction as of 11/6/18 and plaintiff work

up until 4/3/19 even though Accommodations said they never got it in 2/19.

109. Bezos and the Unidentified Executives set up a company and benefited from it's

profits and losses by pretending to be a company that works within the state and

federal laws of anti-discrimination but, it has been at the expense of various employees

with legally protected medical needs who were doing the job with or without an

accommodation.

110. Plaintiff was able to see her doctor in late April because someone cancelled but,

before plaintiff knew she'd get an earlier appointment for the doctor, Amazon had

already terminated plaintiff. Lisa Rolf said she would not excuse any days after 4/12/19.

111.Plaintiff had purchased a car in 3/19 to earn extra cash as she was only making

$15,000 a year from Amazon so, plaintiff started doing gig work in 3/19 to earn extra

cash.

112. When plaintiff was terminated her bills were mounting. All plaintiff's credit cards

were closed expect one with a low credit limit of $300.00, the one with the highest limit

of $15,000 was closed as well as all the rest of them due to late payments or no

payments.

18

113.Plaintiff's car was up for repossession in or about October 2019, plaintiff's credit rating went down, plaintiff's goal of purchasing a home were dashed because of her credit rating and loss of income from Amazon. Plaintiff credit rating also locked her out of a mortgage program that would have paid up to $40,000 of her student loans. Plaintiff's students loans were at $69,000.

114. Plaintiff request compensatory damages for pain and suffering, mental anguish and damage to her credit in the amount of $580,000 ( Five Hundred Eighty Thousand dollars) Plaintiff will seek leave from the Court to amend the complaint to request punitive damages at a later date.

Submitted 8/15/21

/s/ Nona Farrar – nonafarrar@hotmail.com – 312-918-8745 -P.O. Box 5015 – Chgo, Il 60680

19

NOTICE OF SERVICE

I certify that I am mailing certified mail a copy of the complaint and summons 8/16/21

Corporation Service Company

Amazon.com Services, Inc

300 Deschutes Way – Suite 304

Tumwater, WA 98501

Thomas Cwalinski

2710 SW 13th Avenue

Ft. Lauderdale, FL 33315

Corporation Service Company

Jeff Bezos – Amazon Services.com, Inc

300 Deschutes Way – Suite 304

Tumwater, WA 98501

Submitted 8/15/21 /s/ nonafarrar@hotmail.com – P.O. Box 5015 – Chgo, Il 60680

20



# UNIVERSITY OF ILLINOIS
## Hospital & Health Sciences System

Department of Orthopaedics OCC
1801 W. Taylor, Room 2A M/C 743
Chicago, IL 60612-7342
Phone: 312-996-1300
Fax: 312-996-1207

## WORK STATUS REPORT

Employee's name: _Nona Farrar_      Department: _Orthopedic Surgery_

DATE OF INJURY: _6/25/16_

DIAGNOSIS: _____

☐ Able to return to work without restriction on _____
☐ Unable to return to work
☒ Able to return to work with

    ☒ Permanent restriction note below or
    ☐ Temporary restrictions from _____ to _____

Your department will make the final determination regarding returning you to work with these restrictions.

Work Restriction:
    ☐ Work schedule limited to: _____
    ☐ Sedentary work only
    ☐ Keep _____ leg elevated when sitting

| | | |
|---|---|---|
| ☐ Lifting | ☐ Carrying | Limited to _____ pounds |
| ☐ Pushing | ☐ Pulling | Limited to _____ pounds |
| ☐ Walking | ☐ Standing | Limited to _____ pounds |
| ☐ Bending | ☐ Stooping | Limited to _____ pounds |

    ☐ No climbing ladders      ☐ No climbing stairs      ☐ No overhead work
    ☐ Do Not operate moving machinery      ☐ No Driving
    ☐ No use of RIGHT hand/arm      ☐ No use of LEFT hand/arm
    ☐ Keep dressing dry
                                 ☐ Must wear Splint/Sling

Other: _25 pound lifting restriction_

Date of next appointment in Ortho Clinic: _as needed_

Comments:

_[signature]_ MD            _11/6/18_
Physicians signature                  Today's Date

_CONFIDENTIAL EXHIBIT 1_

RECEIVED 2018 AUG 23 AM 11: THURSTON COUNTY SHERIFF

Charge No.: 2019CF2937
Page 2 of 13

**Uncontested Facts:**

1.  Respondent operates websites that sell various products, including books, electronics, CDs, DVDs, and apparel.

2.  On November 2, 2018, Respondent hired Complainant as a part-time Fulfillment Associate ("Associate").

3.  On or around November 2, 2018, Complainant informed Respondent that she had a work restriction which restricted her lifting.

4.  On April 23, 2019, Respondent discharged Complainant.

**Complainant's Allegations-Count A-D:**

Complainant alleges that from November 5, 2018, and continuing through April 3, 2019, Respondent subjected her to harassment due to her race, black **(Count A)**; sex, female **(Count B)**; and physical disability, hand disorder **(Count C)**. Complainant maintains that her race is black, her sex is female, and she is an individual with a disability within the meaning of Section 1-103 (I) of the Illinois Human Rights Act. Complainant maintains that Respondent was aware of her race, sex, and disability. Complainant alleges that from November 5, 2018, and continuing through April 3, 2019, she was subjected to harassment by Respondent in that:

- From November 5, 2018, through April 3, 2019, offensive music was played in the workplace that made offensive references to women.
- In late March 2019, Supervisor Francisco Navarrete ("Navarrete") (male, non-black, non-disabled, no PA[2]) moved the speakers playing offensive music close to her work station.
- In December 2018, an unknown member of management made unauthorized changes to her schedule and altered her time off balance.
- On December 5, 2018, she received a termination notice for missing three shifts due to the schedule change.
- On January 24, 2019, Manager Thomas Cwalinski ("Cwalinski") (male, non-black, non-disabled, no PA) threatened her with termination if she was one minute late.
- In January 2019, Navarrete threatened her with discipline.

Complainant maintains that the conduct created a hostile intimidating and offensive work environment that substantially interfered with her ability to perform the essential functions of her job. Complainant further maintains that her disability does not prevent her from performing the essential functions of her job with or without a reasonable accommodation.

Complainant alleges that from November 5, 2018, and continuing through April 3, 2019, Respondent subjected her to harassment in retaliation for engaging in a protected activity **(Count D)**. Complainant maintains that on November 5, 2018, she engaged in a protected activity when she complained to Cwalinski about offensive music being played in the workplace. Complainant

---

[2] The abbreviation of "no PA" is used in denoting individuals who are not known or alleged to have opposed alleged unlawful discrimination. The abbreviation of "PA" is used in denoting individuals who are known or alleged to have opposed alleged unlawful discrimination.

Acknowledged by associate on January 24, 2019, 11:16:42 PM - Delivered by Cwalinski,Thomas (tccwalin)

# Supportive Feedback Document
# Unpaid Personal Time - Notice



**amazon**.com

**Associate Name:** Farrar,Nona (farrarn)
**Manager Name:** Cwalinski,Thomas (PT3642)
**Created On:** January 24, 2019, 11:16:42 PM

## Summary

We value you as a team member and appreciate the effort you give to ensure we are the Earth's most customer centric company! As an owner, we want you to be successful. You start your employment with a bank of Unpaid Personal Time (UPT), in addition to paid vacation and personal time. Your UPT bank is refreshed with an additional 20 hours each quarter (up to a maximum of 80 hours). This conversation is to make sure you know where you stand with your bank of UPT and the date your bank will be refreshed. This is just a friendly reminder: if your UPT balance is depleted past zero and you have no paid personal time available or other approved leave options, as described in the attendance policy, termination of employment will occur. So, please make sure you track your UPT balance and manage your time. If you have questions or need help, just ask!

## Communication History

The following is a summary of your unpaid personal time feedback:

| Level | Count | Most Recent |
|-------|-------|-------------|

## Details of Current Incident/Specific Concerns

We value you as a team member and appreciate the effort you give to ensure we are the Earth's most customer centric company! As an owner, we want you to be successful. You start your employment with a bank of Unpaid Personal Time (UPT), in addition to paid vacation and personal time. Your UPT bank is refreshed with an additional 20 hours each quarter (up to a maximum of 80 hours). This conversation is to make sure you know where you stand with your bank of UPT and the date your bank will be refreshed. Your next 20-hour allotment of UPT will be deposited into your UPT bank on: **April 01, 2019.** Current UPT Balance is **7**, As of: **January 24, 2019**

## Associate Comments

AA read through document understands but considers the process unfair.

**Associate Signature:** Acknowledged by Farrar,Nona (BadgeID: 12054385)          **Date:** January 24, 2019, 11:16:42 PM

**Manager Signature:** Acknowledged by Cwalinski,Thomas (BadgeID: 12343345)          **Date:** January 24, 2019, 11:16:42 PM

Exhibit 3
NF209

Here are screenshots from those dates to verify the time is correct. It does not show any lines for refunds. Four hours is the correct amount. No time will be refunded back.

| Fri 12/14 | US FC Unpaid Time | 8:00 |
|---|---|---|
| Fri 12/14 | GBL FC Missed Time Tracking | 8:00 |
| Fri 12/14 | Voluntary Time Off | 0:17 |
| Sat 12/15 | US FC Unpaid Time | 8:00 |

| Fri 1/18 | US FC Unpaid Time | 8:00 |
|---|---|---|
| Fri 1/18 | GBL FC Missed Time Tracking | 8:00 |
| Fri 1/18 | Voluntary Time Off | 0:29 |
| Sat 1/19 | US FC Unpaid Time | 8:00 |
| Sat 1/19 | GBL FC Missed Time Tracking | 8:00 |

**From:** Nona Farrar <nonafarrar@hotmail.com>
**Sent:** Thursday, January 31, 2019 10:55 AM
**To:** Rolf, Lisa <rolflis@amazon.com>
**Cc:** Nona Farrar <nonafarrar@hotmail.com>
**Subject:** Re: Amazon ERC - Case 04430890 Confirmation

Last night for Dec 14th through 16th it showed 24 hours 47 min. For Jan 18th through 21st it show3d 16 hours 29 min. He may have made some corrections last night but he said 9 hours would be added back.

Get Outlook for Android

---

**From:** Rolf, Lisa <rolflis@amazon.com>
**Sent:** Thursday, January 31, 2019 10:49:40 AM
**To:** Nona Farrar
**Subject:** RE: Amazon ERC - Case 04430890 Confirmation

Hello Nona,

Thank you for the information. I see the UPT on 12/14/2019 and 12/15/2019. It took 8 hours of UPT for your 21:15 until 5:45 am. Only 16 hours of UPT was taken. On 1/18/2019 and 1/19/2019 8 hours of UPT were pulled for a total of 16 hours. As of 12/31/2019 you had 3 hours of UPT. You received 20 hours of UPT on 1/1/2019. You had a total of 23 hours. It dropped to 7 hours after 1/19/2019. Three hours of UPT was taken on 1/24/2019 to bring you to 4 hours of UPT. There is no error with your UPT total.

Thank you,

**Lisa Rolf | Sr. HRA**
**DMS1 | Eagan, MN**
**email:** rolflis@amazon.com

**amazon**logistics

Work hard. Have fun. Make history.

Exhibit 4

**NF033**